**MISTER TWISTER, INC., Plaintiff,**

v.

**JENEM CORPORATION and Steven Marx, Defendants.**

No. C–2–83–1101.

United States District Court, S.D. Ohio, E.D.

March 10, 1989.

Edwin M. Baranowski and Gay Lynn Rice, Porter, Wright, Morris & Arthur, Columbus, Ohio, for plaintiff.

Steven Marx, pro se.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to enter its findings of fact and conclusions of law with respect to the trial conducted in this case on November 29, 1988, pursuant to Federal Rule of Civil Procedure 52(a).

Plaintiff Mister Twister, Inc., brought this action against defendants JenEm Corporation and Steven Marx seeking injunctive relief, monetary damages, costs, and attorney's fees based upon its allegations of trademark infringement and unfair competition under both federal and Ohio law. Specifically, plaintiff alleges that defendants' actions constitute infringement upon plaintiff's registered trademark in violation of 15 U.S.C. § 1114; constitute the use of a false designation of origin or a false description or representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and constitute trademark infringement and unfair competition in violation of Ohio Revised Code § 4165.02 and Ohio common law. Defendants filed a counterclaim alleging that plaintiff engaged in false patent marking in violation of 35 U.S.C. § 292. Based on the pleadings and the evidence presented at trial, the Court now sets forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact

Since 1973, Plaintiff Mister Twister, Inc., a Louisiana corporation with its principal place of business in Minden, Louisiana, has been in the business of developing and selling fishing lures. Plaintiff began using the MISTER TWISTER trademark for fish-

ing lures in 1974, and, on March 15, 1983, the United States Patent and Trademark Office issued three registrations to Mister Twister. Registration No. 1,231,230 was issued for MISTER TWISTER, and Registration Nos. 1,231,229 and 1,231,225 were issued for MISTER TWISTER and Design. Plaintiff established, through the testimony of its linguistics expert, that MISTER TWISTER is a very strong mark due to its rhyming character and the fact that it is unrelated to properties of the fishing lures to which it is associated.

Plaintiff spends approximately $500,000 per year to market its products nationally through its catalogues, brochures, advertisements in regional and national fishing magazines, local co-op advertising, fishing tackle trade shows, and other public promotions. Plaintiff's marketing techniques put heavy emphasis on the MISTER TWISTER mark. The lures are sold through distributors to both small retailers and large chain stores, such as K–Mart. Plaintiff manufactures a wide variety of lures for most types of game fish. Most of these lures are made of soft plastic, but plaintiff does manufacture and sell some metal lures.

From 1982 to 1986, defendant JenEm Corporation and defendant Steven Marx, president and majority stockholder of JenEm Corporation, sold fishing lures under the trademark WEST SISTER TWISTER. On June 7, 1983 the United States Patent and Trademark Office issued to defendants trademark Registration No. 1,241,341 for WEST SISTER TWISTER. While defendants contend that the name WEST SISTER TWISTER was chosen solely because the lure was developed through fishing off of West Sister Island in Lake Erie and because of the twisting action of a spinner lure, the Court believes that one of the motivating factors going into the choice of the WEST SISTER TWISTER mark was the hope of associating the lure with the line of MISTER TWISTER products.

Defendants sold their fishing lure in major chain stores, such as K–Mart, and mar-keted their product in a catalogue, in advertisements in national fishing magazines and at least one national trade show. The WEST SISTER TWISTER lure is a metal lure and was promoted for nearly all types of North American game fish. Defendants ceased manufacturing their lure in 1985, and the State of Ohio cancelled the corporate charter of JenEm Corporation for failure to pay its corporate franchise taxes in 1986.

From its own examination of the two marks in this case and from the testimony of plaintiff's expert witness in linguistics, the Court believes that there are many similarities between the marks MISTER TWISTER and WEST SISTER TWISTER. Most obviously, both names use the word "Twister." The marks also have the same rhyme scheme due to the use of the modifiers "Mister" and "Sister" along with the subject, "Twister." Although defendants' mark uses the additional modifier "West" before "Sister Twister," the first modifier, "West," is weak, and the emphasis is placed on the rhyming combination "Sister Twister."

The evidence presented before the Court demonstrates that the purchasers of fishing lures do not use a great degree of care in purchasing them. However, plaintiff did not demonstrate that there have been any actual instances of confusion among purchasers of the parties' products.

Defendants failed to introduce any evidence in support of their counterclaim.

### Conclusions of Law

The Court believes that plaintiff has demonstrated that it is entitled to judgment on all of its claims. The same substantive standard applies in all of plaintiffs' claims of trademark infringement and unfair competition; the plaintiff must demonstrate that there is a likelihood of confusion, mistake, or deception between the parties' products as a result of the defendants' actions.[1] *See, e.g., WLWC Centers v. Winners Corp.,* 563 F.Supp. 717, 718–19 n. 1 (M.D.Tenn.1983). In determining

---

1. In an action under 15 U.S.C. § 1114, the plaintiff must also demonstrate that it registered its trademark with the United States Patent and Trademark Office. As noted in the Court's Findings of Fact, plaintiff has registered its mark, MISTER TWISTER.

whether there is a likelihood of confusion, the Court must consider the following factors:

1) the strength of the plaintiff's mark;
2) the relatedness of the goods;
3) the similarity of the marks;
4) any evidence of actual confusion;
5) the marketing channels used;
6) the likely degree of purchaser care;
7) the defendant's intent in selecting the mark; and
8) the likelihood of expansion of the product lines.

*Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir.1982).

■ After weighing these factors, the Court concludes that there is a likelihood of confusion between these products due to defendants' use of the WEST SISTER TWISTER mark. As discussed above, the plaintiff's mark, MISTER TWISTER, is a very strong mark. The Court also finds that the goods sold by the parties are very similar and that many of the same marketing channels are used by both parties. The Court has already discussed in detail its finding that the marks MISTER TWISTER and WEST SISTER TWISTER are very similar. The Court also discussed its conclusion that the degree of care exercised by the purchasers of fishing lures is not great and that one of the motivating factors going into the choice of the WEST SISTER TWISTER mark was the hope of associating the lure with the line of MISTER TWISTER products. Despite the fact that plaintiff presented no evidence of actual confusion, the Court believes that plaintiff has clearly demonstrated the likelihood of confusion by a preponderance of the evidence and that, therefore, plaintiff is entitled to judgment on all of its claims.

■ Since the Court has determined that plaintiff is entitled to judgment on its claims, the Court must now determine the appropriate remedy. Plaintiff seeks injunctive relief under 15 U.S.C. § 1116; an award of profits, compensatory damages, the costs of the action, and attorney's fees under 15 U.S.C. § 1117(a); an order requir-

ing destruction of infringing articles under 15 U.S.C. § 1118 [2]; and cancellation of the WEST SISTER TWISTER registration under 15 U.S.C. § 1119. The Court believes that the most appropriate remedy in this case is a permanent injunction prohibiting defendants from using the mark WEST SISTER TWISTER, or any other mark which is confusingly similar to MISTER TWISTER, and the cancellation of defendants registration of WEST SISTER TWISTER.

■ The Court does not believe that an award of defendants' profits, compensatory damages, costs, or attorney's fees is appropriate in this case. Plaintiff has failed to introduce any evidence that it suffered any actual harm and, therefore, is not entitled to an award of compensatory damages. Although 15 U.S.C. § 1117(a) also authorizes the Court to award a plaintiff the defendants' profits and the costs of the action, the statute also dictates that any such award is to be "subject to the principles of equity." Given that the State of Ohio has cancelled the corporate charter of defendant JenEm Corporation, that defendant Marx has filed a petition in bankruptcy, that defendants did not act wholly in bad faith, and that there is no evidence that plaintiff suffered any actual harm from defendants' actions, the court finds that principles of equity weigh against any award of defendants' profits or the costs of the action. With respect to attorney's fees, 15 U.S.C. § 1117 allows the Court to award attorney's fees only in "exceptional cases." The Court believes that the infringement in this case was not "exceptional" and that, therefore, plaintiff is not entitled to attorney's fees under the statute.

The Court also finds that it is not necessary to order that any of defendants' goods be delivered up for destruction, because the permanent injunction entered in this case is adequate to prevent further infringement on the part of defendants.

### Conclusion

WHEREUPON, upon consideration and being duly advised, the Court finds plain-

---

**2.** These statutes were amended after this action was filed. *See* 15 U.S.C.A. §§ 1116, 1117(a), 1118 (West Supp.1988). The Court will apply the version of the statutes in effect at the time the lawsuit was filed. *See* 15 U.S.C.A. §§ 1116, 1117(a), 1118 (West 1982) (amended 1984).

206

tiff's claims against defendants to be meritorious and defendants' counter claim to be without merit. Accordingly, the Court DIRECTS the Clerk to enter judgment for the plaintiffs on all of its claims and on defendants' counterclaim.

FURTHERMORE, the defendants, their officers, agents, employees, and attorneys are permanently ENJOINED from doing, aiding, contributing to, causing, or abetting any of the following:

(a) using the name or words, "WEST SISTER TWISTER" or "SISTER TWISTER" or "TWISTER" or any other name or words which are confusingly similar to or identical to the words, "MISTER TWISTER," in connection with the sale, offering for sale, distribution, or advertising of fishing lures and related goods and services;

(b) otherwise infringing on the MISTER TWISTER marks of plaintiff's United States Federal Trademark Registration Nos. 1,231,225; 1,231,229; and 1,231,230; and

(c) doing any other act likely to confuse, mislead, or deceive others into believing that defendants or their services or products emanate from or are connected with, sponsored by, or approved by plaintiff or to dilute the distinctive quality of plaintiff's aforesaid trademarks and designs.

In addition, the Court ORDERS that Registration No. 1,241,341 in the United States Patent and Trademark Office of defendants for WEST SISTER TWISTER is hereby cancelled in whole pursuant to 15 U.S.C. § 1119. Upon certification of this Order to the Commissioner of Patents and Trademarks, the Commissioner shall make appropriate entry upon the records of the Patent and Trademark Office of the cancellation of Registration No. 1,241,341 pursuant to this Order.

IT IS SO ORDERED.